# EXHIBIT 1

(Bidding Procedures)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| VIOLIN MEMORY, INC.,[1] | Case No. 16-12782 (LSS) |
| Debtor. | |

## BIDDING PROCEDURES FOR THE SALE OF ALL
## OR ANY PART OF THE ASSETS OF VIOLIN MEMORY, INC.

By motion dated December 14, 2016 (the "**Motion**"), the above-captioned debtor and debtor-in-possession ("**Violin**" or the "**Debtor**") sought approval of, among other things, the procedures through which it will determine the highest or otherwise best price for the sale of all or any part of its assets (collectively, the "**Assets**") in one or more lots to one or more successful bidders.

On [_____], 2017, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtor to determine the highest or otherwise best bid for the Assets through the process and procedures set forth below (the "**Bidding Procedures**"). The Debtor reserves the right to modify the Bidding Procedures as set forth below.

All or any part of the Debtor's assets will be subject to competitive bidding as set forth herein and to approval of the Court pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

The Assets generally constitute all of the assets of Violin Memory, Inc. The Assets shall be sold free and clear, to the fullest extent available under the Bankruptcy Code or any other applicable law, of all liens (statutory, contractual, or otherwise), claims, rights, liabilities, encumbrances and other interests of any kind or nature whatsoever, including but not limited to claims on account of any theory of successor liability, alter ego, or veil piercing.

**All interested parties have the opportunity to bid on all or any part of the Assets in this sale process (the "Sale") in accordance with the Bidding Procedures.**

## A.      Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in acquiring some or all of the Assets (a

---

[1] The Debtor's tax identification number is 20-3940944 and its business address is 4555 Great America Parkway, Suite #150, Santa Clara, CA 95054.

"**Potential Bidder**") must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel,[2] and, in connection with submitting a Qualified Bid (as defined below), must comply with all reasonable requests for additional information from the Debtor or its advisors regarding such person's financial wherewithal or bid.

## B.    Bid Requirements

In order to participate in the bidding process and be deemed a "**Qualified Bidder**," a Potential Bidder must submit a "**Qualified Bid**" by **January 18, 2017, at 5:00 p.m. (ET) (the "Bid Deadline")**.

The Debtor, in consultation with the Consultation Parties,[3] shall determine whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than **5:00 p.m. (ET) on January 19, 2017**. The Debtor may contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid.    If no timely, conforming Qualified Bids are submitted by the Bid Deadline, the Debtor shall not hold the Auction but expressly reserves the right to extend the Bid Deadline.

As of the date of this notice, the Debtor has not entered into any stalking horse or other agreement to sell any of the Assets.  The Debtor is authorized, in consultation with the Consultation Parties, to offer a break-up fee in an amount not to exceed 3% of the total guaranteed cash or cash-equivalent price offered by a Qualified Bidder plus reimbursement of reasonable and documented expenses, subject to a monetary cap not to exceed 2% of the total guaranteed cash or cash-equivalent price offered by a Qualified Bidder who agrees to provide a Qualified Bid for substantially all of the assets on a going concern basis that will serve as a "stalking horse" and opening bid at the Auction.

To constitute a Qualified Bid, a bid must:

(i)    provide evidence reasonably acceptable to the Debtor, in consultation with the Consultation Parties, of the bidder's financial ability to consummate a transaction through a binding commitment for financing, available cash, undrawn lines of credit, or other ability to obtain the funds necessary to consummate the proposed transaction;

(ii)    provide a commitment to consummate the proposed purchase no later than January 31, 2017;

---

[2] To the extent any party previously executed a confidentiality agreement approved by the Debtor and its counsel in connection with the Debtor's ongoing sales process, such party is not required to execute another confidentiality agreement in order to comply with the Bidding Procedures or become a Qualified Bidder.

[3] The term "Consultation Parties" refers to each official committee appointed in this case, if any, in each case by and through counsel and/or other professional advisors to such entities.

(iii)    include a binding, executed, definitive agreement, to be substantially in the form of purchase agreement (the "**Standard Agreement**"),[4] by which the bidder agrees to consummate the purchase of identified Assets (the "**Purchase Agreement**"), and a redline against the Standard Agreement;

(iv)    to the extent the Debtor has previously designated any bidder as a "stalking horse" and provided said bidder with bid protections, the total consideration offered must exceed the consideration offered by the stalking horse bidder plus the value of the stalking horse bid protections approved and an incremental overbid as set forth in these Bidding Procedures;

(v)    identify the Assets or portion thereof to be purchased, and indicate whether the bidder intends to operate such Assets as a going concern;

(vi)    contain a list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor, and a list of any other obligations of the Debtor to be assumed by the bidder;

(vii)    to the extent that the bidder seeks the assumption and assignment of executory contracts and/or unexpired leases in connection with its consummation of the Purchase Agreement, then such bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid;

(viii)    confirm that the offer shall remain open and irrevocable as provided below;

(ix)    be accompanied with a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "**Minimum Deposit**"), which shall be: (a) deposited into an escrow account pursuant to an executed escrow agreement or, with the consent of the Debtor and its counsel, in the form of a certified check or wire transfer payable to the trust account of Debtor's counsel; and (b) used to fund a portion of the purchase price provided for in the bid;

(x)    not contain any condition to closing other than Court approval, including without limitation not being conditioned on obtaining financing or the outcome of any due diligence by the bidder;

---

[4] A copy of the Standard Agreement will be provided on request to any party who executes or has executed a confidentiality agreement in accordance with these Bidding Procedures.

(xi)    include a representation that the bidder has not engaged in any collusion with respect to such bid or the Sale or otherwise engaged in conduct that may preclude a finding of good faith by the Court; and

(xii)    disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; along with sufficient evidence of authority that the bidder is legally empowered, by power of attorney or otherwise, to complete the transaction on the proposed terms.

If a bid submitted on or prior to the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtor is entitled to work with the bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid prior to the commencement of the Auction. In addition, the Debtor, in consultation with the Consultation Parties, may waive one or more defects and cause such bid to be a Qualified Bid prior to the commencement of or during the Auction.

A bid received from a Potential Bidder that meets the requirements set forth above and that is timely received will be considered a Qualified Bid if the Debtor, in consultation with the Consultation Parties, believes that such bid would be consummated if selected as a Successful Bid (defined below).

After the Bid Deadline (defined below), the Debtor, in consultation with the Consultation Parties, shall determine which Qualified Bid or combination of Qualified Bids represents the Starting Qualified Bid (defined below). Prior to the commencement of the Auction, the Debtor shall distribute copies of the Starting Qualified Bid to each Qualified Bidder.

## C.    Bid Submission

A Potential Bidder that desires to make a bid must deliver written or electronic copies of such bid so as to be actually received prior to the Bid Deadline by: (i) counsel for the Debtor, Deryck A Palmer, Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036 and Scott D. Cousins, Bayard P.A., 222 Delaware Avenue, Suite 900 Wilmington, DE 19801, or by email to deryck.palmer@pillsburylaw.com and scousins@bayardlaw.com; (ii) the Debtor's investment bankers, Houlihan Lokey Capital Inc., 111 S. Wacker Drive, 37th Floor, Chicago, IL 60606 (Attn: Andrew Turnbull, Ryan Sandahl), or by email to aturnbull@hl.com and rsandahl@hl.com; and (iii) lead counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Jay R. Indyke, Esq. and Michael A. Klein, Esq.), or by email to jindyke@cooley.com and mklein@cooley.com.

**D.      Due Diligence from the Debtor**

The Debtor shall afford each Potential Bidder reasonable due diligence information. Site access shall be provided upon reasonable request to the Debtor at the discretion of the Debtor within its reasonable business judgment. Potential Bidders may not contact the Debtor's officers or employees without the Debtor's consent.

The Debtor shall not be obligated to furnish any information relating to the Debtor, the Assets and/or the Sale to any person except to a Potential Bidder. The Debtor shall give each Potential Bidder reasonable access to all written due diligence information provided to another Potential Bidder.

The Debtor shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**E.      Due Diligence From Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by any Potential Bidder to comply with requests for additional information may be a basis for the Debtor to determine that such person is not a Qualified Bidder and that a bid made by such person is not a Qualified Bid.

**F.      "As Is, Where Is"**

The Sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, except to the extent set forth in the purchase agreement between the Debtor and the Successful Bidder. All of the Debtor's rights, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**"), if any, with such Interests to attach to the net proceeds of the Sale of the Assets, with the same validity and priority as existed prior to such Sale.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the marked Purchase Agreement.

### G.    The Auction

If more than one Qualified Bid by a Qualified Bidder is received by the Bid Deadline (or if a non-qualified bid received by the Bid Deadline is qualified prior to the commencement of the Auction), an Auction with respect to a sale of the Assets shall take place on **January 23, 2017, at 10:30 a.m. (ET)**, at the offices of Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, Delaware, or at such other place and time as the Debtor shall notify all Qualified Bidders and other invitees. If, however, no such Qualified Bids are received by the Bid Deadline, or if a non-qualified bid received by the Bid Deadline is not qualified prior to the commencement of the Auction, then the Auction will not be held. Bidding at the Auction may be transcribed or videotaped.

Auction Rules:

(i)    Only Qualified Bidders who have submitted a Qualified Bid for some or all of the Assets and their authorized representatives will be eligible to participate at the Auction and to increase their bids. All creditors, including members of the Committee, may attend the Auction. After the Bid Deadline, the Debtor, in consultation with the Consultation Parties, shall determine which Qualified Bid or combination of Qualified Bids represent the then-highest or otherwise best bid for the Assets (the "**Starting Qualified Bid**").

(ii)    Prior to the commencement of the Auction, the Debtor shall distribute copies of the Starting Qualified Bid to each Qualified Bidder. The Auction shall commence with the Starting Qualified Bid and then proceed in minimum increments to be announced upon designation of a stalking horse bidder or at the Auction (the "**Overbid Increment**"). The Debtor shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least the Overbid Increment. During the course of the Auction, the Debtor shall inform each participant which Qualified Bid(s) reflects, in the Debtor's view, after consultation with the Consultation Parties, the highest or otherwise best offer or combination of offers.

(iii)    The Auction may be adjourned as the Debtor deems appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid and to counsel for any official committee appointed in this case.

(iv)    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or Sale Transaction; *provided, however*, in order to obtain the highest and/or otherwise best bid, the Debtor may engage in discussions with one or more Qualified Bidders if it determines, in consultation with the Consultation Parties, that the combination of all or a portion of bids

received from such Qualified Bidders would yield the highest and/or otherwise best offer at the Auction.

## H.    Designation of Successful Bid

Upon the conclusion or cancellation of the Auction, the Debtor shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtor's determination, in consultation with the Consultation Parties, the highest or otherwise best offer for the Assets (the "**Successful Bid**") and the identity of the Qualified Bidder(s) submitting such bid or combination of bids (the "**Successful Bidder**"). The Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared by the Debtor to be the Successful Bid, (ii) definitive documentation has been executed in respect thereof and (iii) the Court has approved the Sale to the Successful Bidder. For the avoidance of doubt, any such acceptance by the Debtor is conditioned upon approval by the Court of such Successful Bid.

## I.    Irrevocability of Certain Bids

The Successful Bid and the bid of the Qualified Bidder or combination of Qualified Bidders (the "**Back-Up Bidder**") that submits the next highest or otherwise best bid or combination of bids (the "**Back-Up Bid**") shall be irrevocable until the earlier of: (i) February 14, 2017 (the "**Outside Back-Up Date**"); or (ii) the closing of the sale to the Successful Bidder or the Back-Up Bidder. Following the entry of the Sale Order, if the Successful Bidder fails to consummate the transaction for any reason, the Back-Up Bid will be deemed the new Successful Bid, and the Debtor will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Court. In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtor, who shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

The Debtor will present the results of the Auction to the Court at the Sale Hearing (as defined below) and the Debtor will request certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtor and its creditors.

## J.    Return of Deposits

Except as otherwise provided in these Bidding Procedures with respect to any Successful Bid and any Back-Up Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) days after the conclusion of the Auction.

The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Assets, as applicable, and applied by the Debtor against the purchase price to be paid by such bidder at the closing of the Sale transaction as approved by the Court.

The Minimum Deposit of the Successful Bidder shall be retained by and forfeited to the Debtor as liquidated damages if the Successful Bidder breaches its obligations to close under the Purchase Agreement, and the Debtor shall then be free to consummate the proposed transaction with the Back-Up Bidder in accordance with the Back-Up Bid as approved by the Court.

The Minimum Deposit of any Back-Up Bidder shall be returned no later than the earlier of (i) the Outside Back-Up Date or (ii) the closing of the Sale of the Assets to the Successful Bidder.

## K.     Expenses

Except to the extent provided for in any stalking horse Purchase Agreement accepted by the Debtor and as further approved by the Court, each Potential Bidder or Qualified Bidder shall bear its own expenses in connection with the Sale and the proposed transaction, whether or not such transaction is ultimately approved.

## L.     Sale Hearing

A hearing to consider approval of the Sale of the Assets to the Successful Bidder will take place on **January 30, 2017, at 10:00 a.m. (ET),** before the Honorable Laurie S. Silverstein in the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., Wilmington, DE 19801 (the "**Sale Hearing**").

## M.     Reservation of Rights

The Debtor, in consultation with the Consultation Parties, reserves the right to (i) modify these Bidding Procedures in any manner that will best promote the goals of the bidding process; or (ii) impose, at or before the Auction, additional customary terms and conditions on the Sale, but only to the extent that such revisions are not inconsistent with the Bidding Procedures Order. Without limiting the foregoing, the Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate and in consultation with the Consultation Parties, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (v) remove Assets from the Sale; (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) effectuate the sale of all or any part of its assets through a plan pursuant to section 1129 of the Bankruptcy Code or (xi) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.